## Beck v. Roach

*William B. Anstine, Jr.* and *Stephen M. Feldman,* for plaintiff.
*Robert H. Griffith,* for garnishee.

BUCKINGHAM, *J.,* October 19, 1978—In this case plaintiff recovered a net verdict against defendant, George G. Roach (Roach) for the sum of $145,000. The suit arose from an automobile accident involving Roach and plaintiff's decedent. Thereafter, Nationwide Insurance Company, (Nationwide), garnishee, Roach's insurance carrier, paid plaintiff its policy limits of $25,000. Plaintiff has filed a writ of execution and interrogatories addressed to Nationwide, in a garnishment proceedings, in order to enforce the deficiency judgment in the sum of $120,000. Nationwide has filed preliminary objections to the writ of execution and the interrogatories. It is obvious that the garnish-

ment action against Nationwide is based on a theory that Nationwide, in bad faith, failed to offer the policy limits to plaintiff in good time.

Nationwide's principal argument is that plaintiff may not proceed against it in garnishment proceedings until Roach has assigned his claim against Nationwide to plaintiff, citing Gray v. Nationwide Mutual Insurance Company, 422 Pa. 500, 223 A. 2d 8 (1966). However, Gray is not authority for this proposition. In Gray, the insured voluntarily assigned his claim against his insurer to plaintiff upon condition that it totally satisfied insured's obligation to plaintiff arising out of the judgment which plaintiff secured against insured in the primary suit and plaintiff thereupon proceeded against insured's insurance company in garnishment proceedings. The Gray court simply approved this assignment arrangement between plaintiff and insured but did not hold it was mandatory that such an assignment take place before plaintiff could proceed against the insurance company by garnishment.

Nationwide also cites a number of out-of-state cases holding that the assignment from insured to plaintiff is necessary before plaintiff may bring garnishment proceedings against the insurance company. We simply do not find these cases persuasive. It seems obvious that if this were the law, plaintiff could be precluded from going against the insurance company by the simple device of insured refusing to assign his claim against his insurance company to plaintiff. No one has brought to our attention any method by which an insured could be compelled to assign his rights to plaintiff and, in today's climate, there is not much incentive for him voluntarily to do so. For example, he may be

judgment-proof and he is, moreover, in no danger of losing his operator's license since all he has to do is to go into bankruptcy and his debt to plaintiff is wiped out.

In any event, if you could legally force insured to assign, it seems to us that direct garnishment proceedings against the insurance company without such an assignment would still be the better and simpler approach, as it would eliminate an unnecessary step.

It is true that Gray held that insured has a right of action in assumpsit against the insurance company which subjects insured to liability by virtue of a breach of the fiduciary duty of good faith representation. Even so, we are still of the opinion that direct garnishment proceedings by plaintiff against the insurance company for the excess verdict is still the proper and most efficient method of litigating the issue of bad faith.

There is authority for this position. We believe that Shaw v. Botens, 278 F. Supp. 226 (D.C. Pa. 1967), cited by plaintiff is or should be the law. There the court, in a well-reasoned opinion, held that, although there are no Pennsylvania appellate court decisions addressing this exact issue, the Pennsylvania cases indicate that even if an insured's judgment debtor has not assigned a claim against his insurer based on the breach of fiduciary duty to good faith representation, the judgment creditor can commence garnishment proceedings in order to determine the merits of such a claim.

In its brief, Nationwide seeks to distinguish Shaw on the ground that there the insurance company never during the pendency of the primary personal injury suit made an offer of settlement to

plaintiff, while here (according to Nationwide's brief) Nationwide did make an offer prior to suit being filed against Roach. It is quite clear, however, that Nationwide is arguing facts not of record. This it may not do.

In this connection, while we feel that Nationwide's preliminary objections to plaintiff's writ of execution and interrogatories must be dismissed, we wish to make it quite clear that we are not passing upon the merits of plaintiff's bad faith claim against Nationwide. Ashbrook v. Kowalick, 332 F. Supp. 78 (E.D. Pa. 1971), cited by plaintiff, may well be distinguishable on its facts from the present case.

Nationwide's final contention is that plaintiff failed to join Roach as a necessary party in this garnishment proceeding. We are puzzled by this argument since the garnishment arises out of and is numbered to the original case of plaintiff against Roach. It may be true that plaintiff has not served Roach with any of the documents or pleadings in this garnishment proceeding but we hardly think that is necessary, assuming that Roach was in fact an insured of Nationwide at the time of the primary suit and assuming further that plaintiff did recover the above-said verdict and judgment against Roach in that suit.

In view of the foregoing we shall enter an order dismissing Nationwide's preliminary objection.

## ORDER

And now, October 19, 1978, the preliminary objections of Nationwide Insurance Company, gar-

nishee, to plaintiff's writ of execution and interrogatories addressed to Nationwide Insurance Company, garnishee, are overruled and dismissed. An exception is granted Nationwide Insurance Company, garnishee.